**SUMMONS ISSUED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ANGEL BONILLA,

                          Plaintiff,

    -against-

THE CITY OF NEW YORK; DONNA BUSACCO,
Individually and in Her Official Capacity; SABRINA
FULFORD, Individually and in Her Official Capacity;
PETER RUBIN, Individually and in His Official Capacity;
DAVID SIEV, Individually and in His Official Capacity;
and JOHN/JANE DOES, Nos. 1-10, Individually and
in Their Official Capacities (members of the New York
City Police Department whose names are presently
unknown to plaintiff),

                         Defendants.
-------------------------------------------------------------------x

**CV 12-3368**

**COMPLAINT**

**Jury Trial Demanded**

**ECF Case**

WEINSTEIN, J.

AZRACK, M.J.

        Plaintiff ANGEL BONILLA, by his attorney, Robert T. Perry, respectfully alleges as follows:

### NATURE OF ACTION

        1.    Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of his civil rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts supplemental claims under New York law.

### JURISDICTION AND VENUE

        2.    This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

        3.    The Court has jurisdiction over plaintiff's federal law claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. The Court has jurisdiction over plaintiff's supplemental state law claims under 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to plaintiff's claims occurred in this district.

## JURY DEMAND

6. Plaintiff respectfully demands trial by jury of all issues properly triable thereby pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7. Plaintiff ANGEL BONILLA is a resident of Brooklyn, New York. Plaintiff is a 53-year-old, disabled veteran and born-again Christian who has had a liver transplant. He lives with his wife, daughter, and three grandchildren. Plaintiff must take anti-rejection medications every few hours to prevent his immune system from rejecting his liver transplant.

8. Defendant THE CITY OF NEW YORK ("the City") is, and was at all times relevant herein, a municipal corporation duly organized and existing under the laws of the State of New York. The City maintains the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

9. Defendant DONNA BUSACCO (Shield No. 00985) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Busacco was a police officer assigned to the 83rd Precinct. Defendant Busacco is being sued in her individual and official capacities.

10. Defendant SABRINA FULFORD (Shield No. 12883) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the

relevant times herein, defendant Fulford was a police officer assigned to the 83rd Precinct. Defendant Fulford is being sued in her individual and official capacities.

11. Defendant PETER RUBIN (Shield No. 5057) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Rubin was a police officer assigned to the 83rd Precinct. Defendant Rubin is being sued in his individual and official capacities.

12. Defendant DAVID SIEV is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Siev was a lieutenant assigned to the 83rd Precinct. Defendant Siev is being sued in his individual and official capacities.

13. All "John Doe" and "Jane Doe" defendants are, and were at all relevant times herein, duly appointed agents, employees, officers, and servants of the NYPD. The Doe defendants are being sued in their individual and official capacities.

14. At all relevant times herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, employees, officers, and servants of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties. At all relevant times herein, the individual defendants were acting for and on behalf of the NYPD, with the power and authority vested in them as agents, employees, officers, and servants of the NYPD.

15. At all relevant times herein, the individual defendants acted jointly and in concert with each other. Each individual defendant had the duty and the opportunity to protect plaintiff from the unlawful actions of the other individual defendants but each individual defendant failed and refused to perform such duty, thereby proximately causing plaintiff's injuries.

## STATEMENT OF FACTS

### The January 29, 2011 Incident

16. On January 29, 2011, in the early evening, plaintiff was at home when he received a phone call from his wife, who said that their 17-year-old granddaughter Odyssey Rodriguez had been arrested and was being held at the 83rd Precinct at 480 Knickerbocker Avenue in Brooklyn. Plaintiff immediately went to the precinct to ascertain the charges against Odyssey and her status.

17. When he arrived at the 83rd Precinct, plaintiff was told by a police officer that Odyssey had been arrested for criminal trespass inside a nearby apartment building at 211 Irving Avenue.

18. Plaintiff told the officer that he was going to 211 Irving Avenue to find out what happened. Plaintiff then left the 83rd Precinct and walked several blocks to 211 Irving Avenue.

19. Upon his arrival, plaintiff saw three people looking out an open second floor window, including Katrina Hernandez, who lived in the building. Plaintiff asked whether he could speak to them about Odyssey. They invited him in. Plaintiff entered the building and went upstairs. Ms. Hernandez told him that Odyssey had been arrested as she sat on a stair step waiting for a friend who lived in the building. Plaintiff then left to return to the 83rd Precinct.

20. At Greene Street and Irving Avenue, plaintiff was stopped by several police officers, shoved up against a sports utility van, punched, kicked, and frisked. Plaintiff offered no physical resistance. At no time did plaintiff behave unlawfully in any way. The officers had no probable cause to believe that plaintiff committed any crime or offense. No weapons, drugs, or contraband were found on plaintiff. Following the frisk, the officers released plaintiff. Plaintiff asked the officers for their names and badge numbers but they refused to disclose that information. Plaintiff then resumed walking to the 83rd Precinct.

21. As plaintiff re-entered the 83rd Precinct, he saw the same officers who had just stopped him. Plaintiff asked them to come over so that he could get their names and badge numbers. The officers came over and took plaintiff into custody. One of the officers told plaintiff, in sum and substance, "Now, you can join your granddaughter." Plaintiff was placed in a cell and held overnight.

22. In connection with plaintiff's arrest, defendants Donna Busacco and Peter Rubin prepared a false and misleading police report and forwarded the report to the Kings County District Attorney's Office ("District Attorney"). As a result, the District Attorney decided to prosecute plaintiff.

23. The next day, January 30, 2011, plaintiff was arraigned in Kings County Criminal Court and charged with Criminal Trespass in the Second Degree (a Class A misdemeanor) and Trespass (a violation). According to the complaint sworn to by defendant Busacco and the supporting deposition sworn to by defendant Rubin, plaintiff entered and remained in the apartment building at "21 Irving Place [sic]" without permission. These allegations were false. Plaintiff pleaded not guilty and was released on his own recognizance after about 24 hours in custody.

24. Thereafter, plaintiff made five court appearances to defend himself against the false charges.

25. On October 25, 2011, the criminal charges against plaintiff were dismissed in their entirety.

### The May 25, 2011 Incident

26. On about May 11, 2011, plaintiff received a phone call from his 14-year-old grandson Giovanni Guevarra, who was calling from plaintiff's apartment to say that the police were there. Plaintiff rushed home.

27. When plaintiff arrived home, he found defendant Sabrina Fulford inside his apartment. Defendant Fulford told plaintiff that she wanted Giovanni to come down to the 83rd Precinct to sign some papers. Plaintiff asked defendant Fulford whether she had an arrest warrant for Giovanni. Defendant Fulford conceded that she did not. Plaintiff then told defendant Fulford to leave. Defendant Fulford left plaintiff's apartment without Giovanni but told plaintiff, in sum and substance, "we'll be back."

28. Two weeks later, on May 25, 2011, at about 2:00 p.m., plaintiff was washing his car in front of his church at 58 Stanhope Street in Brooklyn, when he received another phone call from Giovanni, who was again calling from plaintiff's apartment. Giovanni told plaintiff that the police were back. Plaintiff rushed home.

29. A few minutes earlier, as he finished taking a shower, Giovanni heard a knock on the front door. He opened the door, wearing a towel wrapped around his waist. Several police officers, including defendant Fulford, pushed their way into the apartment and took Giovanni into custody. They let Giovanni put on a pair of shorts but not shoes. On information and belief, the officers lacked any warrant.

30. When plaintiff arrived home, he saw police officers dragging Giovanni in handcuffs in the hallway outside plaintiff's apartment. Plaintiff asked defendant Fulford why Giovanni was being arrested. Defendant Fulford replied, in sum and substance, "You want to find out, go down to the precinct."

31. Plaintiff and his wife followed the police officers out of the building. They did not interfere with Giovanni's arrest. Nonetheless, defendant David Siev, the lieutenant in charge at the scene, ordered both plaintiff and his wife arrested for no lawful reason. Police officers grabbed plaintiff, threw him against the hood of a car, pulled his arms behind his back, cuffed him, and lifted his arms almost up to his neck. At no time did plaintiff offer any physical resistance.

32. Plaintiff and his wife were taken to the 83rd Precinct, where plaintiff's wife was issued a summons for disorderly conduct and released, though only after Giovanni agreed to sign certain papers. Police officers told Giovanni that if he did not sign the papers, plaintiff's wife would be put through the system. Plaintiff himself was put through the system.

33. In connection with plaintiff's arrest, defendants Fulford and Siev prepared a false and misleading police report and forwarded the report to the District Attorney. As a result, the District Attorney decided to prosecute plaintiff.

34. That evening, May 25, 2011, plaintiff was taken to Central Booking in Brooklyn. An emergency medical technician ("EMT") at Central Booking, however, instructed the police officers accompanying plaintiff to take him back to the precinct and then to a hospital so that he could receive his anti-rejection medications.

35. Plaintiff was taken back to the 83rd Precinct but not to the hospital. Through the night plaintiff repeatedly asked defendant Siev and other police officers for his anti-rejection medications. They ignored plaintiff's pleas.

36. The next day, May 26, 2011, plaintiff was taken back to Central Booking. An EMT at Central Booking, realizing that plaintiff faced liver rejection because he had been denied his anti-rejection medications, called an ambulance. Plaintiff was taken to the Brooklyn Hospital Center, where he finally received his anti-rejection medications. Plaintiff then was brought back to Central Booking.

37. The same day, May 26, 2011, plaintiff was arraigned and charged with resisting arrest (a Class A misdemeanor) and obstructing governmental administration in the second degree (a Class A misdemeanor). These charges were false. Plaintiff pleaded not guilty. He was released on his recognizance after more than 24 hours in custody.

38. Thereafter, plaintiff made four appearances to defend himself against the false charges.

39. On October 25, 2011, the criminal case against plaintiff was adjourned in contemplation of dismissal. On April 25, 2012, the criminal charges against plaintiff were dismissed in their entirety.

40. As a result of the foregoing, plaintiff sustained, *inter alia*, physical injuries, mental injuries, emotional distress, embarrassment, humiliation, deprivation of his liberty, and violation of his constitutional rights.

## FIRST CLAIM FOR RELIEF

### (Section 1983 False Arrest Claim Arising From the January 29, 2011 Incident)

41. Plaintiff repeats and realleges paragraphs "1" through "40" with the same force and effect as if they were fully set forth herein.

42. Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned without probable cause to believe that plaintiff had committed any crime or offense, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM FOR RELIEF

### (Section 1983 False Arrest Claim Arising From the May 25, 2011 Incident)

43. Plaintiff repeats and realleges paragraphs "1" through "42" with the same force and effect as if they were fully set forth herein.

44. Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned without probable cause to believe that plaintiff had committed any crime or offense, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## THIRD CLAIM FOR RELIEF

### (Section 1983 Malicious Prosecution Claim Arising From the January 29, 2011 Incident)

45. Plaintiff repeats and realleges paragraphs "1" through "44" with the same force and effect as if they were fully set forth herein.

46. Defendants, acting in concert and within the scope of their authority, caused plaintiff to be prosecuted with malice and without probable cause -- a prosecution that terminated in plaintiff's favor -- in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## FOURTH CLAIM FOR RELIEF

### (Section 1983 Excessive Force Claim Arising From the January 29, 2011 Incident)

47. Plaintiff repeats and realleges paragraphs "1" through "46" with the same force and effect as if they were fully set forth herein.

48. Defendants, acting in concert and within the scope of their authority, used objectively unreasonable force in arresting plaintiff, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## FIFTH CLAIM FOR RELIEF

### (Section 1983 Excessive Force Claim Arising From the May 25, 2011 Incident)

49. Plaintiff repeats and realleges paragraphs "1" through "48" with the same force and effect as if they were fully set forth herein.

50. Defendants, acting in concert and within the scope of their authority, used objectively unreasonable force in arresting plaintiff, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## SIXTH CLAIM FOR RELIEF

### (Section 1983 Due Process Claim Arising From the May 25, 2011 Incident)

51. Plaintiff repeats and realleges paragraphs "1" through "50" with the same force and effect as if they were fully set forth herein.

52. Defendants, acting in concert and within the scope of their authority, were deliberately indifferent to plaintiff's serious medical needs, causing him to suffer unnecessary infliction of pain, in violation of plaintiff's due process right to medical treatment in those circumstances under the Fourteenth Amendment to the United States Constitution.

## SEVENTH CLAIM FOR RELIEF

### (Section 1983 Failure-to-Intervene Claim Arising From the January 29, 2011 Incident)

53. Plaintiff repeats and realleges paragraphs "1" through "52" with the same force and effect as if they were fully set forth herein.

54. Each individual defendant had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, in violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## EIGHTH CLAIM FOR RELIEF

### (Section 1983 Failure-to-Intervene Claim Arising From the May 25, 2011 Incident)

55. Plaintiff repeats and realleges paragraphs "1" through "54" with the same force and effect as if they were fully set forth herein.

56. Each individual defendant had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, in violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## NINTH CLAIM FOR RELIEF

### (Section 1983 Municipal Liability Claim Arising From the January 29, 2011 Incident)

57. Plaintiff repeats and realleges paragraphs "1" through "56" with the same force and effect as if they were fully set forth herein.

58. The individual defendants, singly and collectively, while acting under color of state law, engaged in conduct that constituted customs, policies, practices, procedures, rules, or usages of the City and the NYPD forbidden by the Constitution of the United States.

59. The foregoing customs, policies, practices, procedures, rules, and usages included, but were not limited to, making arrests without probable cause to believe that the arrestees had committed any crime or offense.

60. The existence of the foregoing customs, policies, procedures, rules, and usages may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following recent civil rights actions filed against the City:

(1) **Michael Hemphill v. City of New York**, United States District Court, Southern District of New York, 11 CV 2160;

(2) **Shelly Levy v. City of New York**, United States District Court, Southern District of New York, 11 CV 0227;

(3) **Tilas Jackson v. City of New York**, United States District Court, Southern District of New York, 09 CV 915;

(4) **Francisco Baez v. City of New York**, United States District Court, Southern District of New York, 08 CV 10604;

(5) **Terrell Greaves v. City of New York**, United States District Court, Southern District of New York, 06 CV 5709; and

(6) **Joshua Weiner v. City of New York**, United States District Court, Southern District of New York, 06 CV 6058.

61. The City has inadequately screened, hired, retained, trained, and supervised its employees, including the individual defendants herein, to respect the constitutional rights of those individuals with whom NYPD police officers come in contact.

62. The foregoing customs, policies, practices, procedures, rules, and usages constituted deliberate indifference to plaintiff's safety, well-being, and constitutional rights.

## TENTH CLAIM FOR RELIEF

### (Section 1983 Municipal Liability Claim Arising From the May 25, 2011 Incident)

63. Plaintiff repeats and realleges paragraphs "1" through "62" with the same force and effect as if they were fully set forth herein.

64. The individual defendants, singly and collectively, while acting under color of state law, engaged in conduct that constituted customs, policies, practices, procedures, rules, or usages of the City and the NYPD forbidden by the Constitution of the United States.

65. The foregoing customs, policies, practices, procedures, rules, and usages included, but were not limited to, making arrests without probable cause to believe that the arrestees had committed any crime or offense.

66. The existence of the foregoing customs, policies, procedures, rules, and usages may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following recent civil rights actions filed against the City:

    (1) **Michael Hemphill v. City of New York**, United States District Court, Southern District of New York, 11 CV 2160;

    (2) **Shelly Levy v. City of New York**, United States District Court, Southern District of New York, 11 CV 0227;

    (3) **Tilas Jackson v. City of New York**, United States District Court, Southern District of New York, 09 CV 915;

    (4) **Francisco Baez v. City of New York**, United States District Court, Southern District of New York, 08 CV 10604;

(5) **Terrell Greaves v. City of New York**, United States District Court, Southern District of New York, 06 CV 5709; and

(6) **Joshua Weiner v. City of New York**, United States District Court, Southern District of New York, 06 CV 6058.

67. The City has inadequately screened, hired, retained, trained, and supervised its employees, including the individual defendants herein, to respect the constitutional rights of those individuals with whom NYPD police officers come in contact.

68. The foregoing customs, policies, practices, procedures, rules, and usages constituted deliberate indifference to plaintiff's safety, well-being, and constitutional rights.

69. The foregoing customs, policies, practices, procedures, rules, or usages were the direct and proximate cause of the constitutional violations suffered by plaintiff.

70. The foregoing customs, policies, practices, procedures, rules, or usages were the moving force behind the constitutional violations suffered by plaintiff.

### Supplemental State Law Claims

71. Plaintiff repeats and realleges paragraphs "1" through "70" with the same force and effect as if they were fully set forth herein.

72. Within ninety (90) days after the claims herein arose, plaintiff duly served upon, presented to, and filed with the City Notices of Claim setting forth all facts and information required under New York General Municipal Law § 50-e.

73. More than thirty (30) days have elapsed since the presentation of plaintiff's claims to the City. The City has wholly neglected or refused to make an adjustment or payment thereof.

74. This action was commenced within one (1) year and ninety (90) days after the claims accrued.

75. Plaintiff has complied with all conditions precedent to maintaining the instant action.

## ELEVENTH CLAIM FOR RELIEF

### (False Arrest Under New York Law Arising From the May 25, 2011 Incident)

76. Plaintiff repeats and realleges paragraphs "1" through "75" with the same force and effect as if they were fully set forth herein.

77. Defendants, acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned on May 25, 2011 without probable cause to believe that plaintiff had committed any crime or offense, and without any warrant or authority to do so, in violation of New York law.

## TWELFTH CLAIM FOR RELIEF

### (Malicious Prosecution Under New York Law Arising From the January 29, 2011 Incident)

78. Plaintiff repeats and realleges paragraphs "1" through "77" with the same force and effect as if they were fully set forth herein.

79. Defendants, acting in concert and within the scope of their authority, caused plaintiff to be prosecuted with malice and without probable cause on January 30, 2011 -- a prosecution that terminated in plaintiff's favor on October 25, 2011 -- in violation of New York law.

## THIRTEENTH CLAIM FOR RELIEF

### (Assault Under New York Law Arising From the May 25, 2011 Incident)

80. Plaintiff repeats and realleges paragraphs "1" through "79" with the same force and effect as if they were fully set forth herein.

81. Defendants, acting in concert and within the scope of their authority, placed plaintiff in apprehension of imminent harmful and offensive bodily contact, in violation of New York law.

## FOURTEENTH CLAIM FOR RELIEF

### (Battery Under New York Law Arising From the May 25, 2011 Incident)

82. Plaintiff repeats and realleges paragraphs "1" through "81" with the same force and effect as if they were fully set forth herein.

83. Defendants, acting in concert and within the scope of their authority, made offensive contact with plaintiff without privilege or consent, in violation of New York law.

## FIFTEENTH CLAIM FOR RELIEF

### (Deliberate Indifference to Serious Medical Needs Claim Arising From the May 25, 2011 Incident)

84. Plaintiff repeats and realleges paragraphs "1" through "83" with the same force and effect as if they were fully set forth herein.

85. Defendants, acting in concert and within the scope of their authority, were deliberately indifferent to plaintiff's serious medical needs on May 25 and 26, 2011, causing him to suffer unnecessary infliction of pain, in violation of plaintiff's due process right to medical treatment in those circumstances under New York Law.

## SIXTEENTH CLAIM FOR RELIEF

### (Negligent Screening, Hiring, and Retention Under New York Law Arising From the January 29, 2011 Incident)

86. Plaintiff repeats and realleges paragraphs 1 through "85" with the same force and effect as if they were fully set forth herein.

87. The City failed to use reasonable care in the screening, hiring, and retention of the NYPD employees who participated in the above unlawful conduct in violation of New York law.

## SEVENTEENTH CLAIM FOR RELIEF

### (Negligent Screening, Hiring, and Retention Under New York Law: Arising From the May 25, 2011 Incident)

88.  Plaintiff repeats and realleges paragraphs 1 through "87" with the same force and effect as if they were fully set forth herein.

89.  The City failed to use reasonable care in the screening, hiring, and retention of the NYPD employees who participated in the above unlawful conduct in violation of New York law.

## EIGHTEENTH CLAIM FOR RELIEF

### (Negligent Training and Supervision Under New York Law Arising From the January 29, 2011 Incident)

90.  Plaintiff repeats and realleges paragraphs 1 through "89" with the same force and effect as if they were fully set forth herein.

91.  The City failed to use reasonable care in the training and supervision of the NYPD employees who participated in the above-described unlawful conduct, in violation of New York law.

## NINETEENTH CLAIM FOR RELIEF

### (Negligent Training and Supervision Under New York Law Arising From the May 25, 2011 Incident)

92.  Plaintiff repeats and realleges paragraphs 1 through "91" with the same force and effect as if they were fully set forth herein.

93.  The City failed to use reasonable care in the training and supervision of the NYPD employees who participated in the above-described unlawful conduct, in violation of New York law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief jointly and severally against all the defendants:

(A)  Compensatory damages in an amount to be determined at trial;

(B)  Punitive damages in an amount to be determined at trial;

(C) Reasonable attorney's fees and costs of this litigation; and

(D) Such other relief as this Court deems just and proper.

Dated: Brooklyn, New York
July 9, 2012

Respectfully submitted,

*Robert T. Perry*
ROBERT T. PERRY (RP-1199)
45 Main Street, Suite 230
Brooklyn, New York 11201
(212) 219-9410
rtperry32@gmail.com
*Attorney for Plaintiff*